IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JEANETTE RODRIGUEZ )<br>5655 NW 109Th Ave. )<br>Apt 58 )<br>Doral, FL 33178 )<br>    )<br>         Plaintiff, )<br>    )<br>    v.    ) | **COMPLAINT FOR DAMAGES** |
| COMPASS CONNECTIONS )<br>615 S. College Street - 9th Floor )<br>Charlotte, NC 28202 )<br>    )<br>    **Serve also:** )<br>    Compass Connections )<br>    c/o Registered Agents Inc )<br>    4030 Wake Forest Road, Ste 349 )<br>    Raleigh, NC 27609 )<br>    )<br>         Defendant. ) | **JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Jeanette Rodriguez, by and through undersigned counsel, as her Complaint against Defendant Compass Connections ("Compass"), states and avers the following:

## **PARTIES**

1. Rodriguez is a resident of the city of Doral, county of Miami-Dade, state of Florida.

2. Compass is a foreign non-profit organization with offices in Charlotte, North Carolina.

3. Compass operates a place of business located at 615 S. College Street - 9th Floor, Charlotte, North Carolina 28202.

4. Compass was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 12111(5).

## JURISDICTION & VENUE

5. Compass hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Compass comports with due process.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that Rodriguez is alleging Federal Law Claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because at all times relevant hereto, Defendant is and always has been responsible for the acts alleged herein, a substantial portion of the practices complained of herein occurred in the District, and Defendant has received substantial compensation as a result of doing business in this District. Moreover, at all times material to the allegations contained here, Defendant was registered to conduct business in the state of North Carolina and/or conducted substantial business in the state of North Carolina.

## ADMINISTRATIVE PROCESS

8. Within 180 days of the conduct alleged below, Rodriguez filed a charge of disability discrimination ("Charge of Discrimination") with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2024-09060 against Compass.

9. On or about July 23, 2024, the EEOC issued and mailed a Notice of Right to Sue letter to Rodriguez regarding the Charges of Discrimination brought by Rodriguez against Compass.

10. Rodriguez received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

11. Rodriguez has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Rodriguez has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## ADA COVERAGE

13. At all times referenced herein, Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5), in that it was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

14. At all times referenced herein, Rodriguez was an "employee" within the meaning of 42 U.S.C. § 12111(4), in that she was an individual employed by an employer.

## FACTS

15. Rodriguez is a former employee of Compass.

16. Compass hired Rodriguez on February 6, 2023, as a Case Management Specialist.

17. Rodriguez's work as a Case Management Specialist was completed primarily remotely.

18. Rodriguez was qualified for her position by her skills and experience.

19. Prior to November 2023, Rodriguez suffered from abdominal pain ("Rodriguez's Disability").

20. Rodriguez's Disability substantially interfered with her major life activities.

21. In particular, Rodriguez's Disability substantially interfered with her ability to lift, walk, think, communicate, and work.

22. Rodriguez notified Compass of Rodriguez's Disability.

23. As a result of Rodriguez notifying Compass of Rodriguez's Disability, Compass was aware that Rodriguez was disabled.

24. Alternatively, as a result of Rodriguez notifying Compass of Rodriguez's Disability, Compass perceived Rodriguez as disabled.

25. Alternatively, as a result of Rodriguez notifying Compass of Rodriguez's Disability, Compass was aware of Rodriguez's record of disability.

26. Rodriguez's Disability constitutes a physical impairment.

27. Rodriguez requested time off in order to have the surgery to alleviate Rodriguez's Disability. ("Rodriguez's First Request for Accommodation").

28. In or around November 2023, Rodriguez had a surgery to alleviate Rodriguez's Disability.

29. Rodriguez's doctors are located in Puerto Rico.

30. Rodriguez's surgery occurred in Puerto Rico.

31. When Rodriguez had her surgery, Compass' insurance policy covered the surgery.

32. Upon information and belief, Compass' insurance policy did not change at any relevant time during Rodriguez's employment.

33. On or about December 11, 2023, Compass requested supporting documentation from Rodriguez's surgery.

34. On or about December 15, 2023, Rodriguez replied to Compass's request with the supporting documentation.

35. Once Rodriguez returned to work, she was assigned a Temporary Supervisor, Zulma Rosario.

36. Upon Rodriguez's return to work, Rosario was informed of Rodriguez's disability.

37. Upon information and belief, as a result of Rosario being informed of Rodriguez's disability, Rosario perceived Rodriguez to be disabled.

38. Upon information and belief, as a result of Rosario being informed of Rodriguez's disability, Rosario was aware of Rodriguez's record of disability.

39. When Rodriguez returned to work, she suffered from technical difficulties that prevented her from working.

40. Rodriguez requested assistance from Rosario to get her computer working.

41. Despite Rodriguez's repeated attempts to ask for help, Rosario failed to assist her.

42. Rosario did not fail to assist non-disabled employees.

43. Rosario failed to assist Rodriguez because of her disability.

44. Rosario failing to assist Rodriguez constituted an adverse employment action.

45. Rosario failing to assist Rodriguez constituted an adverse action.

46. On or about March 4, 2024, Rosario gave Rodriguez a negative Annual Assessment.

47. Rosario's negative Annual Assessment referenced home visits that were not completed.

48. The incomplete home visits were incomplete because they were delayed as a result of Rodriguez's disability.

49. The incomplete home visits were incomplete because they were delayed as a result of Rodriguez's requested leave.

50. Giving Rodriguez a negative Annual Assessment was an adverse employment action.

51. Giving Rodriguez a negative Annual Assessment was an adverse action.

52. Rosario gave Rodriguez a negative Annual Assessment because of Rodriguez's disability.

53. Rosario gave Rodriguez a negative Annual Assessment in retaliation for Rodriguez's First Request for Accommodations.

54. On or about March 5, 2024, Rosario pulled Rodriguez into a unscheduled meeting with Mauricio Diaz. (the "Criticism Meeting").

55. Diaz was the South Regional Director in Rodriguez's chain of command.

56. During the Criticism Meeting, Rosario and Diaz criticized Rodriguez's work performance.

57. In criticizing Rodriguez's performance, Rosario and Diaz argued that Rodriguez was not completing work assigned.

58. In criticizing Rodriguez's performance, Rosario and Diaz referenced work assigned that was affected by Rodriguez's time off resulting from Rodriguez's First Request for Accommodations.

59. In criticizing Rodriguez's performance, Rosario and Diaz ignored Rodriguez's requests for technical assistance.

60. Rosario and Diaz criticized Rodriguez's work performance in retaliation for Rodriguez's First Request for Accommodations.

61. Rosario and Diaz criticized Rodriguez's work performance because of Rodriguez's Disability.

62. Rosario and Diaz ignored Rodriguez's requests for technical assistance because of Rodriguez's Disability.

63. During the Criticism Meeting, Rosario and Diaz requested that Rodriguez re-submit her medical documentation.

64. After the Criticism Meeting, Rodriguez attempted to report Rosario's and Diaz's discrimination to Compass and Compass' Human resources. ("Rodriguez's First Complaint of Discrimination").

65. Rodriguez's First Complaint of Discrimination relayed the facts of the negative Annual Assessment.

66. Rodriguez's First Complaint of Discrimination complained that the negative Annual Assessment was discriminatory on the basis of her disability.

67. Rodriguez's First Complaint of Discrimination relayed the facts of the Criticism Meeting.

68. Rodriguez's First Complaint of Discrimination complained that the Criticism Meeting was discriminatory on the basis of her disability.

69. Compass' human resources are run through FirstDay Foundation ("FirstDay").

70. FirstDay handled Rodriguez's complaints.

71. Specifically, Rodriguez attempted to send Rodriguez's First Complaint of Discrimination to Elizabeth Osorio, Vanessa Ortiz-Harry, and Ivette Suarez, as well as to FirstDay.

72. Osorio was an Associate National Director in Rodriguez's chain of command.

73. Ortiz-Harry was the National Program Director in Rodriguez's chain of command.

74. Suarez was an Associate National Director-Service Delivery, in Rodriguez's chain of command.

75. Rodriguez received a notification that Rodriguez's First Complaint of Discrimination was undeliverable.

76. Rodriguez re-submitted Rodriguez's First Complaint of Discrimination on or about March 6, 2024.

77. Rodriguez re-submitted the medical documentation on or about March 6, 2024.

78. On or about March 18, 2024, Suarez confirmed receipt of Rodriguez's First Complaint of Discrimination in an email.

79. Compass has a policy to investigate reports of disability discrimination.

80. An investigation should include interviewing the complainant.

81. An investigation should include interviewing the subject of the complaint.

82. An investigation should include interviewing the subject of the reported discrimination.

83. An investigation should include interviewing witnesses to the reported discrimination.

84. An investigation should include getting a written statement from the complainant.

85. An investigation should include getting a written statement from the subject of the complaint.

86. An investigation should include getting a written statement from the subject of the reported discrimination.

87. In response to Rodriguez's First Report of Discrimination, Defendants did not interview Rodriguez.

88. In response to Rodriguez's First Report of Discrimination, Defendants did not interview Rosario.

89. In response to Rodriguez's First Report of Discrimination, Defendants did not interview FirstDay.

90. In response to Rodriguez's First Report of Discrimination, Defendants did not interview witnesses.

91. In response to Rodriguez's First Report of Discrimination, Defendants did not get a written statement from Rodriguez.

92. In response to Rodriguez's First Report of Discrimination, Defendants did not get a written statement from Rosario.

93. In response to Rodriguez's First Report of Discrimination, Defendants did not get a written statement from FirstDay.

94. Defendants did not investigate Rodriguez's First Report of Discrimination.

95. After Rodriguez's First Complaint of Discrimination, the upper management team, along with Rosario, offered Rodriguez a catch up plan for her return to work.

96. The upper management team consisted of Victoria Hernandez, Suarez, Diaz, Ortiz-Harry, and Osorio. (collectively "Upper Management").

97. Hernandez was an Associate Regional Director in Rodriguez's chain of command.

98. The catch up plan was unreasonably difficult to follow.

99. Compass does not offer unreasonably difficult catch up plans to non-disabled individuals.

100. Offering Rodriguez an unreasonably difficult catch up plan was an adverse employment action.

101. Offering Rodriguez an unreasonably difficult catch up plan was an adverse action.

102. Compass offered Rodriguez an unreasonably difficult catch up plan because of her disability.

103. Compass offered Rodriguez an unreasonably difficult catch up plan in retaliation for Rodriguez's First Request for Accommodation.

104. Compass offered Rodriguez an unreasonably difficult catch up plan in retaliation for Rodrigue's First Complaint of Discrimination.

105. Rodriguez tried to comply with the catch up plan.

106. Rodriguez suffered from computer complications while she was attempting to follow the catch up plan.

107. Rodriguez repeatedly reached out to Rosario and Compass' IT department to assist with her computer complications.

108. Despite Rodriguez's repeated attempts to ask for help, Rosario and Compass' IT department failed to assist her.

109. Rosario and Compass' IT department did not fail to assist non-disabled employees.

110. Rosario and Compass' IT department failed to assist Rodriguez because of her disability.

111. Rosario and Compass' IT department failed to assist Rodriguez constituted an adverse employment action.

112. Rosario and Compass' IT department failed to assist Rodriguez constituted an adverse action.

113. Rosario and Compass' IT department failed to assist Rodriguez in retaliation for Rodriguez's First Request for Accommodation.

114. Rosario and Compass' IT department failed to assist Rodriguez in retaliation for Rodriguez's First Report of Discrimination.

115. In trying to comply with the catch up plan, Rodriguez would complete all steps necessary to be in the field completing site visits.

116. After Rodriguez completed all necessary steps to complete the site visit, Rodriguez would notify Rosario that she was prepared for the site visit.

117. After Rodriguez would send Rosario the notifications that Rodriguez was prepared for the site visit, Rosario cancelled Rodriguez's site visits.

118. Rosario cancelled Rodriguez's site visits stating that Rodriguez should stay home and complete the work that she could remotely.

119. Rosario cancelling Rodriguez's site visits prevented Rodriguez from complying with the catch up plan.

120. In or around early April 2024, Rodriguez requested to have the week of April 22, 2024, off to visit her doctor in relation to Rodriguez's Disability. ("Rodriguez's Second Request for Accommodation").

121. Rodriguez's Second Request for Accommodation was reasonable.

122. Rodriguez's Second Request for Accommodation would not cause undue burden to Compass.

123. FirstDay informed Rodriguez that she was not allowed to use the company's health insurance because her doctor was out of the country.

124. Rodriguez informed FirstDay that she was covered by the company's health insurance in Puerto Rico.

125. Rodriguez informed FirstDay that insurance had already covered her treatment previously.

126. FirstDay eventually allowed Rodriguez to take the time off.

127. Rodriguez went out on her second leave as requested, however Compass' insurance did not pay the doctors.

128. Upon information and belief, FirstDay cancelled the insurance company's coverage of Rodriguez.

129. Human Recourses cancelling the insurance company's coverage of Rodriguez was an adverse employment action.

130. Human Recourses cancelling the insurance company's coverage of Rodriguez was an adverse action.

131. FirstDay cancelled the insurance company's coverage of Rodriguez in retaliation for Rodriguez's First Request for Accommodation.

132. FirstDay cancelled the insurance company's coverage of Rodriguez in retaliation for Rodriguez's Second Request for Accommodation.

133. FirstDay cancelled the insurance company's coverage of Rodriguez in retaliation for Rodriguez's First Complaint of Discrimination.

134. On or about April 29, 2024, Rosario called a meeting to discuss the cases that were closed in March.

135. During that meeting, Rosario stated that Rodriguez did not have sufficient documentation of her disability.

136. At that time, FirstDay had already accepted Rodriguez's paperwork demonstrating her disability.

137. Rodriguez told Rosario that Rodriguez had already submitted her paperwork.

138. On or about May 9, 2024, Rodriguez complained to FirstDay about disability discrimination. ("Rodriguez's Second Complaint of Discrimination").

139. In response to Rodriguez's Second Report of Discrimination, Defendants did not interview Rodriguez.

140. In response to Rodriguez's Second Report of Discrimination, Defendants did not interview Rosario.

141. In response to Rodriguez's Second Report of Discrimination, Defendants did not interview FirstDay.

142. In response to Rodriguez's Second Report of Discrimination, Defendants did not interview witnesses.

143. In response to Rodriguez's Second Report of Discrimination, Defendants did not get a written statement from Rodriguez.

144. In response to Rodriguez's Second Report of Discrimination, Defendants did not get a written statement from Rosario.

145. In response to Rodriguez's Second Report of Discrimination, Defendants did not get a written statement from FirstDay.

146. Defendants did not investigate Rodriguez's Second Report of Discrimination.

147. In Rodriguez's Second Complaint of Discrimination, she complained that Rosario and Compass' IT Department failed to support her because of her disability.

148. In Rodriguez's Second Complaint of Discrimination, she complained that FirstDay had cancelled her insurance coverage because of her disability.

149. In Rodriguez's Second Complaint of Discrimination, she complained that FirstDay had cancelled her insurance coverage in retaliation for Rodriguez's First Request For Accommodation.

150. In Rodriguez's Second Complaint of Discrimination, she complained that FirstDay had cancelled her insurance coverage because of Rodriguez's Second Request for Accommodation.

151. In Rodriguez's Second Complaint of Discrimination, she complained that Rosario was discriminating against her on the basis of her disability.

152. On or about June 6, 2024, Rodriguez requested an update on the investigations into her reports of discrimination.

153. On or about June 7, 2024, Rodriguez received an email stating that the file for her First Report of Discrimination was being closed.

154. Rodriguez requested further information, about the investigation into her reports of discrimination.

155. Compass did not provide further information about the investigations into Rodriguez's reports of discrimination.

156. On or about June 10, 2024 Upper Management met with Rodriguez. (the "Termination Meeting").

157. During the Termination Meeting, Upper Management terminated Rodriguez's employment.

158. Compass did not provide a reason for Rodriguez's termination except that "the investigation is over now."

159. Compass' purported reason for Rodriguez's termination is pretext for disability discrimination.

160. Compass' purported reason for Rodriguez's termination is pretext for retaliation for Rodriguez's First Request for Accommodation.

161. Compass' purported reason for Rodriguez's termination is pretext for retaliation for Rodriguez's Second Request for Accommodation.

162. Compass' purported reason for Rodriguez's termination is pretext for retaliation for Rodrigez's First Complaint of Discrimination.

163. Defendant did not proffer a legitimate non-discriminatory reason for terminating Rodriguez.

164. Upon information and belief, Rodriguez's termination of employment, Defendants hired or retained an individual outside of Rodriguez's protected class to replace Rodriguez.

165. As a result of Defendant's conduct, Rodriguez suffered, and will continue to suffer damages.

## COUNT I: <u>DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA</u>

166. Rodriguez restates each and every paragraph of this complaint as if it were fully restated herein.

167. Compass treated Rodriguez differently than other similarly situated employees based on her disabling condition.

168. Compass treated Rodriguez differently than other similarly situated employees based on her perceived disability and/or physical impairment.

169. Compass treated Rodriguez differently than other similarly situated employees based on her record of having a substantial physical impairment.

170. During Rodriguez's employment, Compass denied Rodriguez's Appointment Request.

171. Rodriguez's Appointment Request was a request for reasonable accommodations.

172. Compass failed to engage in an interactive process with Rodriguez to allow her to return from medical leave.

173. By failing to engage in an interactive process with Rodriguez, Compass violated the ADA, which prohibits discrimination on the basis of disability, perceived disability, and perceived physical impairment.

174. On or about June 10, 2024, Compass terminated Rodriguez's employment without just cause.

175. Compass terminated Rodriguez's employment based on her disability.

176. Compass terminated Rodriguez's employment based on her perceived disabilities.

177. Compass terminated Rodriguez's employment based on her recording of having a substantial physical impairment.

178. Compass violated the ADA when they discharged Rodriguez based on her disabilities.

179. Compass violated the ADA when they discharged Rodriguez based on her perceived disabilities.

180. Compass violated the ADA when they discharged Rodriguez based on her record of having a substantial physical impairment.

181. As a result of Compass' discrimination in violation of the ADA, Rodriguez has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Rodriguez to injunctive and equitable monetary relief.

182. Rodriguez has suffered severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

183. In their discriminatory actions as alleged above, Compass acted with malice or reckless indifference to the rights of Rodriguez, thereby entitling Rodriguez to an award of punitive damages.

184. To remedy the violations of the rights of Rodriguez secured by the ADA, Rodriguez requests that the Court award her the relief prayed for below.

## COUNT II: **RETALIATION IN VIOLATION OF THE ADA**

185. Rodriguez restates each and every paragraph of this Complaint as if it were fully restated herein.

186. Pursuant to 42 U.S.C. § 12203, "No person shall discriminate against any individual because such individual opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

187. Rodriguez attempted to participate in the interactive process afforded to her by the ADA.

188. Rodriguez's Appointment Request constituted a request for reasonable accommodation.

189. A request for reasonable accommodation is a protected activity under the ADA.

190. Subsequent to Rodriguez's Appointment Request, Compass terminated her employment.

191. Compass' actions were retaliatory in nature based on Rodriguez's Appointment Request.

192. As a result of Compass' discrimination in violation of the ADA, Rodriguez has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Rodriguez to injunctive and equitable monetary relief.

193. Rodriguez has suffered severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

194. In their discriminatory action as alleged above, Compass acted with malice and reckless indifference to the rights of Rodriguez, thereby entitling Rodriguez to an award of punitive damages.

195. To remedy the violations of the rights of Rodriguez secured by the ADA, Rodriguez requests that the Court award her the relief demanded below.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Jeanette Rodriguez respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Rodriguez for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Rodriguez claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*
Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:     (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Jeanette Rodriguez*

## JURY DEMAND

Plaintiff Jeanette Rodriguez demands a trial by jury by the maximum number of jurors permitted.

    /s/ *Evan Gungor*
Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**